### 4412.  HOLLAND v. THE STATE.

An indictment alleged that the accused operated an automobile along one of the public highways of the State "at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of the said highway, and then and there, upon approaching a certain pair of mules hitched to and driven to a certain wagon by W. C. Dobbs on said highway, did, while operating said machine on said highway, then and there fail and refuse to give reasonable warning of the approach of said machine by the use of a bell, horn, gong, or other signal, and fail to use every reasonable precaution to insure the safety of persons in said wagon and to prevent frightening said mules." *Held:*

1. While the allegation that the machine was being driven "at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of the said highway," was too general, and set forth no offense, it may be treated as surplusage.
2. So much of the indictment as charged a failure to warn of the approach of the machine set forth an offense under section 6 of the act approved August 13, 1910, regulating the use of automobiles.
3. It was not necessary to allege how the animals became frightened, nor the manner in which the driver thereof was injured.
DECIDED OCTOBER 22, 1912.

Indictment for misdemeanor; from Catoosa superior court—Judge Fite.  August 7, 1912.

*J. E. Rosser, Maddox, McCamy & Shumate,* for plaintiff in error.
*Thomas C. Milner, solicitor-general, George W. Stevens,* contra.

POTTLE, J.  The indictment alleged that the accused operated an automobile on one of the public highways "at a rate of speed greater than was reasonable and proper, having regard to the traffic and use of the said highway, and then and there, upon approaching a certain pair of mules hitched to and driven to a certain wagon

49

by W. C. Dobbs on said highway, did, while operating said machine on said highway, then and there fail and refuse to give reasonable warning of the approach of said machine by the use of a bell, horn, gong, or other signal, and fail to use every reasonable precaution to insure the safety of persons in said wagon, and to prevent frightening said mules." A motion to quash the indictment was overruled, and exception has been taken to this judgment.

In *Hayes* v. *State,* ante, 371 (75 S. E. 523), we held, that "A penal law which is of doubtful construction and in which the act denominated as a crime is described in terms so general and indefinite as to make the question of criminality dependent upon the idiosyncrasies of the men who may happen to constitute the court and jury, and is of such a nature that honest and intelligent men are unable to ascertain what particular act it seeks to condemn, is incapable of enforcement, and will be held to be null and void. So much of the act approved August 13, 1910 (Acts 1910, p. 92), regulating the use of automobiles, as undertakes to make penal the operation of an automobile on one of the highways of this State at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of such highway, or so as to endanger the life or limb of any person or the safety of any property,' is too uncertain and indefinite in its terms to be capable of enforcement." Under this decision, no offense was charged in that part of the indictment wherein it was alleged that the machine was being operated "at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of the said highway." But we think this language may be regarded as harmless surplusage, if an offense is set forth elsewhere in the indictment. It is alleged that the accused failed to give the signal of his approach required by the act approved August 13, 1910 (Acts 1910, p. 92). Section 6 of that act is as follows: "Be it further enacted by the authority aforesaid, that upon approaching a pedestrian in a roadway or highway as described in this act, or a horse or horses or other draft animals being ridden or driven thereon, the person operating the machine shall give reasonable warning of its approach by the use of a bell, horn, gong, or other signal, and use every reasonable precaution to insure the safety of such person or animal, and in the case of horses or other draft animals, to prevent frightening the same."

It is argued that the only persons intended to be protected by this section are pedestrians. It is true a pedestrian is the only person mentioned, and, therefore, literally the words "such person" in the latter part of the section refer to a pedestrian. But while penal laws are construed strictly, they are nevertheless to have a reasonable intendment, and in these laws, like all others, the intention of the lawmakers must be sought. It would be unreasonable to protect pedestrians and animals on the highway and withhold protection from persons driving the animals, and the act will not be construed to have such effect, unless the language demands it. The section refers to "a horse or horses or other draft animals *being ridden or driven,*" and requires one operating an automobile to signal "such person or animal" of the approach of the machine. The words "by any person" might have been inserted after the word "driven," and the meaning would be unmistakable. But since horses or other draft animals are commonly ridden or driven only by *persons,* it is manifest that the words "such person" were intended to apply to the rider or driver of an animal on the highway, as well as to a pedestrian. Section 6 is sufficiently clear and definite in its terms, and the indictment charged a violation of its provisions. It was not necessary to allege more explicitly how the animals became frightened, nor the manner in which the driver was injured. The offense consists in failing to signal. The consequences of the failure are immaterial.

*Judgment affirmed.*